# FEDERAL DEFENDER SERVICES OF WISCONSIN, INC.

LEGAL COUNSEL

Craig W. Albee, Federal Defender
Krista A. Halla-Valdes, First Assistant

Joseph A. Bugni, Madison Supervisor
John W. Campion
Shelley M. Fite
Anderson M. Gansner
Gabriela A. Leija
Peter R. Moyers
Ronnie V. Murray
Tom E. Phillip
Joshua D. Uller
Kelly A. Welsh

22 East Mifflin Street
Suite 1000
Madison, Wisconsin  53703

Telephone 608-260-9900
Facsimile 608-260-9901

February 21, 2020

Honorable William M. Conley
United States District Court
120 North Henry Street
Madison, Wisconsin 53703

> Re:    *United States v. Nicholas Kvatek*
>        Case No. 19-cr-82-wmc

Dear Judge Conley:

In anticipation of the sentencing hearing scheduled for February 27, 2020, I write to submit the defense's request that the Court impose the 15-year mandatory minimum sentence. I also request that the Court order this significant sentence to run concurrently to the revocation sentences imposed in Portage County case numbers 12-CF-250 and 14-CF-65, which totaled roughly three years' imprisonment with a projected release date of April 7, 2022. (PSR ¶¶ 1, 55, 56.) Mr. Kvatek's supervision was revoked solely based on the conduct that forms the instant offense. In addition, I respectfully request that this federal sentence be ordered to run concurrently to any sentence that may be imposed in Portage County case number 19-CF-247, as "the details of [that] offense are that of the instant federal offense." (PSR ¶ 63.)

When examining the statutory purposes of sentencing and the factors the Court must consider under 18 U.S.C. § 3553(a), imposition of the 15-year mandatory minimum in this case is the appropriate sentence. I begin with 18 U.S.C. § 3553(a)(4), which requires the Court to consider the sentencing range established by the Sentencing Guidelines, as well as the circumstances of the offense. *See* 18 U.S.C. § 3553(a)(1).

FEDERAL DEFENDER SERVICES
    OF WISCONSIN, INC.

Honorable William M. Conley
February 21, 2020
Page -2-

In late 2019, Mr. Kvatek entered into a short-lived, yet *completely* inappropriate relationship. He took two separate sexually explicit videos during one of several encounters he'd had with the victim. There is no evidence that Mr. Kvatek distributed either of the videos to any other person, and he did not post them to the internet; in fact, there's no evidence to suggest that he viewed the videos again any time after he took them. He did not take any videos during the other encounters he'd had with the victim. He'd also been looking at adult pornography online when he, like so many others, stumbled across images of child pornography. He did not set out looking for it, but once he discovered it, he downloaded images to his phone.

For taking those two videos that sat on his phone and no one else saw, Mr. Kvatek's base offense level starts at level 32—the same base offense level for kidnapping and abduction. It's higher than the starting point for attempted murder,[1] aggravated assault resulting in permanent or life-threatening bodily injury, and robbery involving the discharge of a firearm. But the guidelines in these kinds of cases are just getting started: numerous enhancements for "specific offense characteristics" get piled on top of an already very steep base offense level. Yet, the specific offense characteristics aren't specific at all; they are general offense characteristics that apply in nearly every case, and two other enhancements add on seven total levels for nearly identical conduct.

In cases involving possession of child pornography in fiscal year 2018, 94.1% of defendants had images of children under 12.[2] Here, Mr. Kvatek receives a four-level increase for that particular offense characteristic rather than the usual two under the child pornography possession guideline. Over sixty-seven percent of defendants received the four-level increase for sadistic or masochistic depictions, and 96.6% received the two-level increase for use of a computer.[3] These specific offense characteristics that really do little to distinguish among offenders adds eight levels—and pushes his level above the offense level for second degree murder. Then, he receives two levels for having repeated sexual contact with the victim, but also receives five full levels for being a repeat sex offender against the same minor because of the same repeated sexual contact. (PSR ¶¶ 32, 39.) Even with a reduction for accepting responsibility and pleading guilty to his crime, Mr. Kvatek's offense level exceeds that for first degree murder.

---

[1] If the object of the offense did not constitute first degree murder. *See* U.S.S.G. 2A2.1.

[2] *See* United States Sentencing Commission, *Use of Guidelines and Specific Offense Characteristics for Fiscal Year 2018, available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/guideline-application-frequencies/2018/Use_of_SOC_Guideline_Based.pdf, p. 45.

[3] *Id.* at 45, 46.

FEDERAL DEFENDER SERVICES
    OF WISCONSIN, INC.

Honorable William M. Conley
February 21, 2020
Page -3-


        All of this is to say that the Guidelines should not be the driver of Mr. Kvatek's
sentence. The multiple enhancements fail to recognize the varying culpability of
individual defendants and instead impose severe penalties for conduct present in
virtually all cases. What's more, the guidelines used in these kinds of cases were created
without any empirical evidence, therefore failing to properly exemplify what should be
the Sentencing Commission's careful exercise of its institutional role.[4] With the guideline
range exceeding the statutory maximum, as is common in these types of cases where the
enhancements lump nearly all offenders at or above the maximum, the guidelines prove
to be a poor guide to sentencing judges.

        The Court cannot impose anything less than 15 years behind bars for Mr. Kvatek's
crime, while the statutory maximum is 30. While this is a crime certainly worthy of
punishment, Mr. Kvatek's conduct does not place him among the worst of the worst
offenders such that a sentence at or near the maximum would be warranted. And the
government is capped at 18 years for its sentencing recommendation, but what would
one more day above 4,653 days[5] accomplish in this case to meet the goals of sentencing?

        Mr. Kvatek does have a criminal history, but it's nearly entirely for property
crimes and ways to get money, such as by faking a robbery at age 19, stealing checks,
other personal belongings, and stealing copper irrigation wire to trade in for cash, and
burglarizing a store for electronics and video gaming merchandise to trade for cash. He
has absolutely no other sex offenses in his background. The longest total combined
sentence he's ever served was four years' imprisonment for the copper theft and burglary
cases that date back to 2010 and 2014, respectively. (PSR ¶¶ 55, 56.) And he received three
years' imprisonment upon revocation of his supervision in those cases based on the
conduct that forms the instant offense—but the law mandates a sentence five times longer
than that here.

        And while he does have a criminal history, and he's done time in the Wisconsin
Department of Corrections, a 15-year term in a federal prison based not on property
crimes, but because of a sex offense, will be a much different kind of experience for Mr.

---

[4] *See United States v. Grober*, 624 F.3d 592-600-01 (3rd Cir. 2010); *see also United States v. Henderson*, 649 F.3d
955, 959-60 (9th Cir. 2011) ("[T]he child pornography Guidelines were not developed in a manner
'exemplify[ing] the [Sentencing] Commission's exercise of its characteristic institutional role,' ... so district
judges must enjoy the same liberty to depart from them based on reasonable policy disagreement as they
do from the crack-cocaine Guidelines discussed in *Kimbrough*.")
[5] After application of the 15% credit for good time.

FEDERAL DEFENDER SERVICES
    OF WISCONSIN, INC.

Honorable William M. Conley
February 21, 2020
Page -4-

Kvatek. He'll have years-upon-years of time to reflect on the choices that put him there. Serving a sentence that's nearly four times longer than any sentence he's ever served will certainly provide specific deterrence and protection of the public. But a sentence that's longer than 15 years is unnecessary for public protection, as he's never committed a crime like this before in his life, and he doesn't otherwise engage seriously violent crimes. What's more, Mr. Kvatek has demonstrated in the past that he can live a life on the right side of the law: after his arrest in 1997 for faking the robbery, he was not arrested for any other crime for over a decade, and it was for THC possession. (PSR ¶¶ 50, 51.)

Retribution, protection of the public, and deterrence will be had with a 15-year sentence. Mr. Kvatek will lose over a decade of his life behind bars for what he's done; he'll be released close to his mid-50s. Anything longer than that significant sentence is greater than necessary to achieve the paramount goals of sentencing.

Thank you for your kind consideration.

Sincerely,

/s/ Kelly A. Welsh

Kelly A. Welsh
Associate Federal Defender

cc:    AUSA Elizabeth Altman
       Mr. Nicholas Kvatek